Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4196 | **DATE** | 11/18/2002 |
| **CASE TITLE** | Timothy Cunningham vs. Village of Mt Prospect, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motions to dismiss are granted in part and denied in part. (5-1,6-1) Status hearing set for 12/2/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 19 2002 | |
| | Notified counsel by telephone. | | date docketed | 15 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | 02 NOV 18 PM 3:00 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY CUNNINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VILLAGE OF MOUNT PROSPECT, ) | |
| a municipality; and THE BOARD OF FIRE ) | Judge Ronald Guzmán |
| AND POLICE COMMISSIONERS OF THE ) | |
| VILLAGE OF MOUNT PROSPECT, Chief ) | |
| MICHAEL FIGOLAH, individually and in ) | Case No. 02 C 4196 |
| his official capacity; Captain CHARLES ) | |
| LIVINGSTON, individually and in his official ) | |
| capacity; Captain HENRY DAWSON, ) | |
| individually and in his official capacity; ) | |
| Captain ANTHONY HUEMANN, ) | DOCKETED |
| individually and in his official capacity, ) | |
| ) | NOV 1 9 2002 |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Timothy Cunningham ("Cunningham") has sued the Village of Mount Prospect ("the Village"), the Board of Fire and Police Commissioners of the Village of Mount Prospect ("the Board"), Michael Figolah ("Figolah") both individually and acting in his official capacity, Charles Livingston ("Livingston") both individually and acting in his official capacity, Henry Dawson ("Dawson") both individually and acting in his official capacity, and Anthony Huemann ("Huemann") both individually and acting in his official capacity (collectively the "Individual Defendants") for violating 42 U.S.C § 1983 (Counts I and II).

Pending is the Village and the Individual Defendants' motion to dismiss all claims raised by Cunningham pursuant to Federal Rules of Civil Procedure 12(b)(1) and

15

12(b)(6). Also pending is the Board's motion to dismiss Count I pursuant to Rule 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, the motion of the Village and Individual Defendants is denied in part and granted in part.

## FACTUAL BACKGROUND

The following facts, taken from Cunningham's complaint, are assumed to be true for purposes of the Defendants' motions to dismiss. *Sanville v. McCaughtry*, 266 F. 3d 724, 732 (7th Cir. 2001). Cunningham has been an employed by the Village of Mount Prospect's Fire Department since May 26, 1987 as an Advanced Firefighter / Paramedic. (Compl. ¶4, ¶6). The Defendant, Village of Mount Prospect, is a municipal corporation which operates the Mount Prospect Fire Department ("Fire Department") and the Board of Fire and Police Commissioners of the Village of Mount Prospect, both of which are located in the Village of Mount Prospect, Cook County, Illinois. (Compl. ¶7). The Defendant, Board of Fire and Police Commissioners of the Village of Mount Prospect acts as an agent of the Village of Mount Prospect in appointing employees to the position of Lieutenant within the Fire Department, and in determining the eligibility and qualifications required for appointment to the position of Lieutenant. (Compl. ¶8).

The Individual Defendant Figolah is the current Chief of the Mount Prospect Fire Department. (Compl. ¶9). The Individual Defendants Dawson, Livingston, Huemann are Captains of the Mount Prospect Fire Department. (Compl. ¶10-12).

In order to be eligible for promotion to the rank of Lieutenant, a candidate must pass the following four phases in the Lieutenant promotional process: (1) simulator test; (2) written examination; (3) subjective evaluation by the Fire Department's three captains; and (4) "merit" scores or "merit" points. (Compl. ¶20-24). The three (3)

2

Defendant Captains, Livingston, Dawson and Huemann perform all scoring of the written exams administered in phase two (2)(Compl. ¶26) of the promotional process as well as award all merit points in phase four (4). (Compl. ¶27).

In May 1990, Cunningham was elected to the Firefighters Collective Bargaining Group as a Wage Committee member and negotiator. (Compl. ¶37). While in this position, Cunningham vigorously negotiated wage agreements and urged the Mount Prospect Fire Department to have formal contracts with the union throughout the years of 1990-1993. (Compl. ¶38). Management was not in favor of such formal contracts. (Compl. ¶39).

In 1993, Cunningham was elected to serve as an executive Board Member of this Collective Bargaining Group. (Compl. ¶40). At this same time, Cunningham submitted his application to begin the Lieutenant promotional process. (Compl. ¶40). In February of 1994, Cunningham passed the simulator test (phase one of the promotional process) (Compl. ¶41) and in March of 1994, Cunningham passed the written test (phase two of the promotional process), receiving the highest score out of all the candidates. (Compl. ¶42). On March 15, 1994, Cunningham was informed that he could not continue on with the Lieutenant promotional process because once the subjective portion of the exam (phase three of the promotional process) was added to his score, his total score dropped too low. (Compl. ¶44).

Throughout Cunningham's efforts to be promoted to Lieutenant, Cunningham was negotiating on behalf of the Collective Bargaining Group for a new wage agreement. (Compl. ¶43). The original wage agreement expired on March 30, 1994. (Compl. ¶45) and a new three-year wage agreement came into effect in 1994. (Compl. ¶46). In 1997,

negotiations for a third wage agreement began, at which time Cunningham was the Chairman of the Wage Committee. (Compl. ¶46).

In April of 1997, Cunningham submitted a second application for the Lieutenant's position. (Compl. ¶47). By this time the testing process had changed. (Compl. ¶48). In response to this change, many of the applicants complained, stating the new process was unfair and unethical. (Compl. ¶49).

On May 31, 1997, the list of qualified Lieutenant applicants was posted; this list included Cunningham. (Compl. ¶50). Throughout July of 1997, Cunningham was told to "keep his mouth shut" regarding the new testing process, and that by doing so he would help his reputation with management because, by this point, "people just thought of [him] as synonymous with the Union." (Compl. ¶51).

In May of 2000, Cunningham resigned his position as Chairman of the Wage Committee. (Compl. ¶53). In July of 2000, Cunningham was severely injured in an off-duty motorcycle accident. (Compl. ¶54). In order to recover from this accident, Cunningham used all of his sick time, vacation time and personal time. (Compl. ¶55).

On or about October 16, 2000, the Defendants, through their agent, sent Cunningham a letter which stated that he would be placed on family medical leave. (Compl. ¶56). At this time, Cunningham was advised that he should either "pension off" or, alternatively, work an ADA position. (Compl. ¶56). Other members of the Fire Department who had been in similar situations to Cunningham were allowed to go into "negative" or "borrowed" sick time. (Compl. ¶58). Cunningham was denied the opportunity to use "negative" sick time or "borrowed" sick time donated by fellow firefighters, despite the fact that other employees had been allowed to do so in the past.

(Compl. ¶59, 62). Cunningham then requested "work trade" time to compensate for his absences, which was denied. (Compl. ¶63). Eventually, Cunningham applied for disability pension as he had been advised. (Compl. ¶60).

In December of 2000, a new Lieutenant promotion eligibility list was created by the Defendants. (Compl. ¶65). Cunningham was on this list. (Compl. ¶67). Cunningham then returned to full duty work on January 6, 2001. (Compl. ¶66). In February of 2001, the December 2000 list was cancelled, and a new list was created in its place. (Compl. ¶68). Every eligible employee from the December 2000 list was transferred to the February 2001 list except for Cunningham (Compl. ¶69). This was despite the fact that Cunningham had earned the highest scores on the standard knowledge and the local written exam parts in the 2000 promotional process. (Compl. ¶70). Defendants then told Cunningham that he failed the promotional process and could no longer continue to apply for a promotion. (Compl. ¶71).

Cunningham had continually served as a consultant to the Wage Committee throughout the 1990's and into 2000 and 20001. (Compl. ¶72). Cunningham was told by superiors that it was widely believed that he was the sole reason that the Mount Prospect Fire Department had voted to unionize. (Compl. ¶74). Cunningham filed the instant complaint initiating this action on June 12, 2002.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept all allegations as true and draw all reasonable inferences in favor of the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for

5

resolving a contest about the facts or merits of the case. *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 805 (N.D. Ill. 1996). This provision must be read in conjunction with Federal Rule of Civil Procedure ("Rule") 8(a) which mandates a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a); *Stepan Co.*, 948 F. Supp. at 805. This Court only requires "notice pleading," therefore the pleadings must be liberally construed and mere vagueness or lack of detail alone is not sufficient grounds for dismissal. *Id.* As a result, a motion to dismiss may be granted only if the Court concludes that the non-movant can prove no set of facts in support of his claim which would entitle him to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A.     First Amendment Retaliation Claim

"It is clearly established that a State may not [retaliate against] an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To state a claim of retaliation against a public employee's exercise of First Amendment free speech rights, the public employee must show that 1) the implicated speech was constitutionally protected under the circumstances, and 2) the defendant retaliated against the speaker because of the speech. *Button v. Kibby-Brown*, 146 F. 3d 526, 529 (7th Cir. 1998).

Whether the speech or association in question is a matter of public interest is a question of law for the court to address. *Taylor v. Carmouche*, 214 F.3d 788 (7th Cir. 2000). When a public employee, such as Cunningham, alleges a violation of his constitutional right to associate freely with others, the Court analyzes his claim under the approach announced by the Supreme Court in *Pickering v. Board of Education.* 391 U.S.

6

563 (1968) reiterated in *Connick v. Myers*, 461 U.S. 138 (1983). As the Court later noted, *Pickering* reflected "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Id.* at 143.

Courts applying the *Connick-Pickering* test must do more than consider the general subject matter of speech and "must...delve deeper into the precise content form, and context of the speech that admittedly may be of some interest to the public." *Cliff v. Bd. of Sch. Comm'rs of Indianapolis*, 42 F. 3d 403, 410 (7th Cir. 1994). It is clearly established that an individual has a right to engage in union activity which is protected by the freedom of association in the First Amendment. *McLaughlin v. Tilendis*, 398 F. 2d 287 (7th Cir. 1968).

Cunningham claims that the Board, the Village, and the Individual Defendants, acting in their official capacity, have violated 42 USC §1983 by retaliating against him for exercising his constitutionally protected rights in one or more of the following ways:

(1) in the administration of the lieutenant's exam process and plaintiff's exclusion from it;

(2) in awarding merit points in an arbitrary, discriminatory and or retaliatory manner;

(3) in the administration of handling the plaintiff's extended sick leave;

(4) by intentionally and unlawfully retaliating against plaintiff for engaging in statutorily protected activity, including being involved in a union and representation thereof;

(5) by implementing such policies and practices of applying the exam results in a fashion not used for firefighters/ paramedics who were not strongly involved with promoting the union and/or who were not involved in the Wage Committee's adversarial positions with the same management who decided the subjective portion of the

7

>       lieutenants exam; and
>
> (6) by discriminating against the plaintiff as a result of his
>       union affiliation.

Defendants argue that the government, in its role as an employer, may place reasonable restrictions upon its employees' First Amendment rights of free speech and association and that Cunningham's speech was not protected. In this case, Cunningham's activity or speech consisted of union-organizing and wage negotiation efforts on behalf of the employees of the Mount Prospect Fire Department and at this stage of the litigation we can only conclude that it is protected.

Although Cunningham's speech, as a matter of law, does not touch upon a matter of public concern "merely because it is union-related," courts have recognized that such activity, in a broad sense, touches upon matters of public concern. *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1995). Therefore, the court must probe into the facts alleged to determine the precise content, form and context of Cunningham's activity.

After reviewing the facts alleged, the court finds that the Cunningham's speech and association for purposes of this motion to dismiss, can properly be characterized as touching upon matters of public interest. Cunningham participated in the Wage Committee on behalf of himself and his fellow union members. Although Cunningham's participation in the union was motivated, in part, by his desire to gain higher wages for himself, his attempts to secure formal contracts with the defendants spanned a period of ten years and went beyond his own self-interest. Cunningham advocated on behalf of himself and his fellow employees, his expression cannot be characterized as solely personal in nature.

8

The First Amendment protects the right to advocate, either individually or through association, on behalf of a union. *See Hanover Township Fed'n of Teachers Local 1954 (AFL-CIO) v. Hanover Comty School Corp.*, 457 F.2d 456 (7th Cir. 1972). As a result, for purposes of this motion to dismiss, Cunningham's speech and association can only be concluded to be related to matters of public concern and protected by the First Amendment.

Under an alternative theory, the Defendants argue that the §1983 claims should be dismissed from federal court, because to allow an "associational claim based on union activity to continue under the veil of the First Amendment would circumscribe the effectiveness and purpose of the Illinois Public Labor Relations Act ... [and] ... the presence of a state law indicates a lack of federal first amendment protections showing that Illinois public employees have associational and speech rights only by statute."

This argument is clearly wrong. It has been clearly held that the First Amendment prohibits public employers' retaliation or discrimination because of employees advocating on behalf of a union. *Berry v. Illinois Dep't of Human Servs.*, 2001 WL 111035 (N.D. Ill.) *citing Air Line Pilots Association v. Miller*, 118 S. Ct. 1761, 1763-64 (1998). Furthermore, under the Supremacy Clause of the U.S. Constitution (Art. VI, cl. 2), federal law preempts state law either by "express provision, by implication, or be a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995). Therefore, Defendants motions to dismiss Counts I and II are denied.

**B.     Qualified Immunity**

The Individual Defendants argue that they are entitled to qualified immunity. In

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982), the Supreme Court stated that government officials performing discretionary functions have a qualified immunity from money damages if their actions do not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Id.* at 818. Qualified immunity includes "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question." *Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 838-39, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). It is, therefore, incumbent on the courts to review the immunity defense critically at an early stage of the proceedings. *Siegert v. Gilley,* 500 U.S. 226, 231-32, 111 S.Ct. 1789, 114 L.Ed.2d 277.

Qualified immunity is a question of law rather than fact, and therefore the Court rather than the jury is the proper decision maker. *See Smith v. Fruin,* 28 F.3d 646, 650 (7th Cur.1994). The test is objective, and is whether the law was clear in relation to the specific facts confronting the official when he acted. *Chan v. Wodnicki,* 123 F. 3d 1005, 1008 (7th Cir. 1997). In the context of a qualified immunity defense, the plaintiff bears the burden of establishing the existence of a clearly established constitutional right. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir. 1988) (en banc). Moreover, discovery should not be allowed until the question of qualified immunity is resolved. *Harlow v. Fitzgerald,* 457 U.S. 800, 818-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

In this case, in order to determine whether the Individual Defendants are entitled to the qualified immunity defense, the court must first determine: (1) whether the Individual Defendants' alleged conduct amounts to a violation of Cunningham's First Amendment rights and (2) whether the conduct was clearly established as a violation of

the Constitution at the time of the alleged violation. As previously stated, the speech of a government employee warrants First Amendment protection if that speech addresses a matter of public speech and/or concern.

The court has already determined that Cunningham's speech falls under the rubric of public concern. Cunningham has alleged in his complaint specific instances of retaliation, including: (1) the administration of the lieutenant's exam process and plaintiff's exclusion from it; (2) the awarding of merit points in an arbitrary, discriminatory and or retaliatory manner; (3) the administration of plaintiff's extended sick leave; (4) the intentional and unlawful retaliation against plaintiff for engaging in statutorily protected activity, including being involved in a union and representation thereof; (5) the practice of applying his exam results in a fashion not used for firefighters/paramedics who were not strongly involved with promoting the union and/or who were not involved in the Wage Committee; and (6) in the discrimination against plaintiff as a result of his union affiliation.

As a result of such allegations, Cunningham has plead sufficient facts to establish that his speech is constitutionally protected and the complaint raises the inference that the Individual Defendants retaliated against Cunningham for his activities in the union. This may or may not be true but the factual issue of what motivated Defendants' actions is a matter best left for discovery.

After establishing that Cunningham has adequately alleged a violation of a constitutional right, the second level of inquiry in a qualified immunity analysis involves whether the law was "clearly established" at the time of the alleged violation. When a law is established on a certain point, public employees are expected to conform their

conduct accordingly, and they may be held liable when they do not. *Smith v. Fruin*, 28 F.3d 646, 650 (1994). On the other hand, they need not predict the laws evolution, they need not know that a broad reading of precedent will prevail over a narrow reading. *Id.* "Clearly established" for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right; this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent. *Wilson v. Layne*, 526 U.S. 603, 604, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523.

The precise question before the Court is whether it was sufficiently clear to the Individual Defendants that Cunningham's speech on behalf of, and in association with, the union fell within the protection of the First Amendment. It is settled that a public employee may not be retaliated against for engaging in constitutionally protected activities. *See Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). However, this First Amendment right, as previously discussed, is not absolute. Under *Pickering* the Court must balance the employee's right as a citizen to comment on matters of public concern and the public employer's interest in promoting the efficiency of the public services it performs. 391 U.S. at 568, 88 S.Ct. at 1735. In order to achieve such balance, an employer's justification for the discipline must be taken into account in determining whether the defendants' conduct was objectively reasonable, that is, whether a "reasonably competent employer would have concluded that the discipline could be

imposed without violating the employee's First Amendment rights. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Despite the fact that when *Pickering's* fact intensive balancing test is at issue, the asserted First Amendment right can rarely be considered clearly established for purposes of the qualified immunity standard, *Buzek v. County of Saunders*, 972 F.2d 992, 997 (8th Cir. 1992), the Court rejects the Individual Defendants' summary claim of qualified immunity. Cunningham's actions and association with the wage committee unquestionably dealt with a matter of public concern. Furthermore, the Individual Defendants have failed to allege any facts such as efficiency of the public service they perform, which (under *Pickering's* balancing test) would justify their actions. Moreover, Cunningham's complaint states a claim for declaratory and injunctive relief. Qualified immunity does not shield defendant from those types of relief. *See Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). Therefore, the Individual Defendants' motion to dismiss on the grounds of qualified immunity is denied without prejudice.

### C. Official Capacity Suits are Redundant

In regards to Count I, Defendants argue that, because Cunningham has sued both the Individual Defendants in their official capacity as management employees of the Fire Department, as well as the Village of Mount Prospect, the purported liable government entity, the suit against the Individual Defendants in their official capacities is redundant and unnecessary and should be dismissed on such grounds. This Court agrees.

In contrast to individual capacity suits, when an officer is sued under Section 1983 in his official capacity, such an action operates as a claim against the government entity itself. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55 (1978).

According to the U.S. Supreme Court, because suits against government officials (in this case, the Individual Defendants) and direct suits against government entities (in this case, the Village of Mount Prospect) are functionally equivalent, there no longer exists a need to bring official-capacity suits against local government officials. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) and *Admiral Theater v. City of Chicago*, 832 F. Supp. 1195, 1200 (N.D. Ill. 1993). This Court finds that the intended Defendant in this case is the Village of Mount Prospect, and therefore the Village of Mount Prospect should be sued directly. To keep the Individual Defendants as parties in their official capacities would be redundant hence Individual Defendants are dismissed in their official capacities. The Individual Defendants in their individual capacities remain.

## D. STATUTE OF LIMITATIONS

Defendants' next argument puts forth that Cunningham's claims are time barred because he has failed to set forth any actionable conduct that occurred within the applicable statute of limitations. The Seventh Circuit stated that the applicable statute of limitations for §1983 claims in Illinois is two-years. *Farrell v. McDonough*, 966 F.2d 279, 283 (7th Cir. 1992) *citing* 735 ILCS 5/13-202.

This law suit was initiated on June 12, 2002, therefore under this rule, Cunningham must set forth conduct that occurred on or after June 12, 2000. Cunningham argues that his §1983 claim is not time barred because the Defendant's conduct establishes a continuous pattern of retaliation against him.

The continuing violations doctrine allows a plaintiff to obtain relief for related acts that fall within the statute of limitations period. *Selan v. Kiley*, 969 F.2d 560, 564

(7th Cir. 1992). Under this exception, the question is whether the defendant's acts were related closely enough to constitute a continuing violation, or were they merely discrete, isolated and completed acts which must be regarded as individual violations. *Pomozal v. City of Highland Park*, 2001 WL 1104731 (N.D. Ill.).

The Court reiterates the nature of the federal courts and notice pleading. Under Federal Rule of Civil Procedure 8 one pleads a claim for relief by briefly describing the events that have occurred. FED. R. CIV. P. 8(a); *Petri v. Gatlin*, 997 F.Supp. 956, 965 (N.D.Ill. 1997). Accordingly, at this stage the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

With these principles in mind, the court rejects Defendants arguments that Cunningham's complaint is time barred. Cunningham has clearly alleged events spanning over a ten year period of time, several of which occurred within the two years prior to the filing of this complaint. At this point, it is not obvious whether such events can be considered continuous in nature. However, Cunningham is entitled to further discovery to support his claim. Thus, Defendants' motion to dismiss any claims based upon allegations that occurred more than two years prior to the filing of this complaint is denied without prejudice.

### E. INDEMNIFICATION

Count III of Cunningham's complaint attempts to set forth a claim for indemnification by the Village of Mt. Prospect for the Individual Defendants in both capacities. While the gist of this count is clear, in the event of established liability the Village of Mt. Prospect would be required to indemnify the Individual Defendants

pursuant to 745 ILCS 10/9-102, this court agrees with Defendants that this count fails to state a separate cause of action against the Individual Defendants. Cunningham certainly could rely on this indemnification statute in the event this lawsuit is successful. However, this indemnification count fails to state an independent claim to support an independent count in his complaint. Therefore, Count III is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants motions to dismiss are granted in part and denied in part (##5-1,6-1).


**SO ORDERED**

**ENTERED:**

*/s/ Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**